**BLACKMORE, Auditor et, Plaintiff v. EBERSBACH, Receiver, Defendant.**

**EBERSBACH, Receiver, Plaintiff v. BLACKMORE, Auditor, Defendant.**

Ohio Appeals, Fourth District, Meigs County.

Nos. 105 & 106. Decided December 21, 1931.

Messrs. Cedric W. Clark, Pomeroy; A. D. Russell, and D. H. Peoples, Pomeroy, for Blackmore, auditor.

Messrs. Butler & Parker and Fred W. Crow, Pomeroy, for Ebersbach, receiver.

## OPINION

By MIDDLETON, J.

This proceeding involves the cases shown in the caption in which, as there indicated, each party to the proceeding in the lower court has filed a petition in error. For conven-

ience we will first discuss the record presented by the receiver in case No. 106. In that petition the plaintiff seeks to reverse a judgment entered in the Court of Common Pleas against The Martin Ebersbach Company in the sum of approximately $30,000 for taxes claimed to be due from said company on certain intangible property which the company had not returned for taxation. The case came into the Court of Common Pleas under favor of §5611-2 GC. It was submitted in that court on a transcript from the State Tax Commission which purported to include all the evidence adduced in the hearing before that body and some additional evidence consisting of depositions which had been taken in the interim between the hearing before the commission and the hearing in the Court of Common Pleas.

It would serve no purpose to give more than a general statement of the facts involved in this litigation. Briefly stated then the record shows that in 1920 the Ebersbach Company entered into a contract with The Great Lakes Coal Company, which latter company was shortly thereafter merged with The New Pittsburg Coal Company. By the terms of this contract the Ebersbach Company agreed to convey and the Pittsburg Coal Company agreed to purchase a large coal field in Meigs county embracing more than six thousand acres of coal land, including mines thereon in operation and mining structures and a large amount of personal property The consideration to be paid was $2,050,000 and the legal title was to remain in the vendor until full payment which was extended for several years. The vendee was given possession of the property and was required to pay the taxes thereon. In 1923 The New Pittsburg Coal Company defaulted in its payment of the installment of the purchase money then due and accrued interest. On January 1, 1924, there was due the Ebersbach Company under said contract the sum of $550,000 principal and accrued interest. In that year the Ebersbach Company brought an action for the amount then due and unpaid as aforesaid. The litigation following this suit continued until July or August, 1928, when by the judgment and decree of the Court of Appeals the Ebersbach Company recovered from the coal company approximately $730,000, which shortly thereafter was paid by the coal company. The record shows that the coal company after four years of litigation succeeded in establishing a credit of only approximately $9,000 to the original claim for $550,000. During the years named, beginning with the year 1924 and continuing to and including the year 1928, the Ebersbach Company made no return for taxation of

this claim for $550,000, the balance due under its contract with the coal company and claimed by it in said suit.

It is apparent from the record that the Ebersbach Company assumed, and its receiver now contends, that its claim against the coal company during all of said period was not taxable. It is not entirely clear from the record on what ground or for what reason this claim is made altho its argument now appears to be devoted mainly to the contention that the claim had no actual value in money during the time it was in the courts for collection. It would seem, in view of the pronouncement of the Supreme Court in the case of **Rheinboldt v Raine, Auditor et, 52 Oh St 160,** that the question as to whether the balance due on the contract is taxable or not is not open to inquiry or dispute. In that case the court held:

"A sum due the vendor of real estate from the vendee as purchase money, to pay which the vendee has given an absolute obligation, is a credit and taxable as such notwithstanding the vendor has retained legal title of the land sold as his security."

In Cooley on Taxation, 4 Ed., page 1247, the statement is made that in contracts to sell land where the vendor retains title the balances due are taxable as credits. Among the cases cited in support of this text is City v Iron & Land Company, Ltd., 132 Mich. 132, 92 N. W. 934.

In the case of Clark v Horn, Auditor, 98 N. W. 148, it is held:

"Where a vendor contracted to sell certain land and to convey the land to the vendee whenever he should comply with his part of the agreement to pay $26,000 for the land, and the vendee was in possession of the premises after he had made the second partial payment, a subsequent stipulation in the contract that on the vendee's default the agreement should be void did not render the indebtedness created thereby non-enforcible in the event of the vendee's default, and the contract was properly assessed for taxation as a credit due the vendor."

When the litigation between the parties began the coal company had theretofore paid approximately three-fourths of the consideration named in its contract with the Ebersbach

Company. By reason of those facts it was apparent from the pleadings at the beginning of the litigation that a rescission of the contract between the parties would not be made by an order of the court. The question litigated under the pleadings must have been directed entirely to a claim for damages for the failure of the Ebersbach Company to comply with all the conditions imposed upon it by the contract. The whole difficulty in this case arises from the fact that not until after that litigation resulted in a final judgment in favor of the Ebersbach Company was the question of the taxable value of the claim considered either by the taxing authorities or by the company.

While we do not regard it of any great importance it may be well to observe that in 1927 the Ebersbach Company in the Court of Common Pleas recovered a judgment for the nominal value of its claim less a credit of $11,000. While the judgment was appealed that proceeding suspended but did not vacate or reverse the judgment. So that for the year 1928 at least it had been demonstrated by the judgment of a court of competent jurisdiction that the claim of the Ebersbach Company had substantially its nominal value. Notwithstanding this fact and that finally in the same year the claim brought approximately $730,000 it is the contention of the receiver that at no time was this claim taxable for the reason that it had no actual value in money. In support of this claim he introduced in evidence the testimony of several witnesses who testified that the claim had no value in money. It is evident that the witnesses referred to were estimating from the standpoint of their position in business or from their individual occupation. It is obvious that the Court of Common Pleas did not accept their opinions and on the whole evidence proceeded to give the claim its nominal or face value. And this it had a legal right to do subject, however, to certain limitations if the Ebersbach Company had seen fit to make it possible for that court to recognize such limitations.

It is evident, we think, that the claim at no time should have been returned at its nominal or face value. As in **Cameron v Cappeller, 41 Oh St 533**, the claim was subject to reduction in value by reason of the expenses the Ebersbach Company was incurring to collect it. It goes without saying that it cost that company a considerable sum of money to prosecute its action to a successful termination. The Ebersbach Company, and it alone, had full and complete knowledge of its expenses in making the collection. It elected in the proceeding before the county auditor and the board of re-

vision to deny all liability, and it has continued to so deny any legal obligation whatever to the present time. This court is not justified in reversing the judgment of the lower court on a supposed right and in the absence of any evidence in the record to establish such right. The court may not in this proceeding fix the amount of expense incurred by the Ebersbach Company in its litigation and direct that the value of the claim for taxation be reduced to the extent of the amount so fixed. We make these observations only to acquaint the parties with our conclusion so that upon a retrial of the case the company may have an opportunity to avail itself of the defense suggested here.

It is our conclusion that the claim in question was subject to taxation and it was not prejudicial to any legal rights of the plaintiff in error in this case to assess the same for taxation.

In case No. 105 it is claimed by the auditor and his co-plaintiffs in error that the trial court erred in excluding from the property it found to be taxable certain non-taxable bonds and stocks. The evidence fails to establish any facts which would bring the holding of these non-taxable bonds and stocks within any of the provisions of §5376 GC. In other words, the securities in question were purchased with funds of the company that came to it thru money received from the sale of its property to the coal company. No indebtedness was created by it in the purchase of such securities. The failure to list the non-taxable securities in question in no way violated the provisions of the section aforesaid and that section has no application here under the facts.

The auditor further complains of the failure of the trial court to assess the penalty as then provided by §5398 GC. This section as then in effect was enacted March 27, 1925, and became effective January 1, 1926. 111 Ohio Laws 250. The provisions of §5398 GC, in force prior to the act of 1925 may be found in an act passed March 28, 1923. 110 Ohio Laws 248. It follows that the assessment of penalties for 1924 and 1925, if made, must necessarily be made under the act of 1923. But that act was repealed by the act going into effect January 1, 1926, and which by its terms provides for penalties beginning with 1926 and subsequent to that date. At this time there is no statutory authority for the assessment of any penalty for the years 1924 and 1925. The act of 1925 provides that the auditor:

"* * * shall also determine as nearly as practicable the true amount or value of the personal property, moneys, credits

and investments which such person failed to return or upon which he should have been, but was not, taxed for the year 1926 or for any year or years thereafter. To the amount so ascertained for any of said years he shall add fifty per cent, assess the omitted sums so increased by said penalty. at the rate of taxation belonging to such year, and accordingly enter the amount on the proper tax list in his office, giving a certificate therefor to the county treasurer who shall collect it as other taxes. If the auditor finds for the year 1926 or for any years thereafter that the error or omission was made without intention to mislead, deceive or defraud for the purpose of evading taxation on the part of the person whose duty it was to make the return, he may remit any penalty for such year, but no such penalty shall be remitted unless such person shall first pay to the county all taxes lawfully due and payable within sixty days after the amount of said lawful taxes are determined and placed on the tax list." **111 Ohio Laws 250.**

The provisions quoted make it the mandatory duty of the county auditor to add the penalty of fifty per cent to the property which the taxpayer failed or omitted to return for taxation. It makes it his mandatory duty to assess the omitted sum so increased by the penalty and to give a certificate of the taxes so assessed to the county treasurer for collection. If any question remains as to the mandatory duty of the auditor to assess the penalty and the treasurer to collect the taxes the taxes on the omitted sum increased by the penalty it is fully answered by the further requirement that no penalty shall be remitted unless the taxpayer shall first pay the taxes within sixty days after they are determined and placed on the tax list.

It appears from the record that the auditor imposed a penalty on the omitted property for the years 1926, 1927 and 1928, and the tax commission thereafter did not interfere with such assessment. However, we are not concerned here with the action of the tax authorities. This proceeding is one to review the decree or judgment of the Court of Common Pleas whose power and jurisdiction is clearly defined by Chief Justice Marshall in **Floyd v Light & Heat Company, 111 Oh St 56.** While the trial court had the right to modify the judgment of the taxing authorities and the further right to render a final judgment after such modification it was bound, as was the taxing authorities, to follow the positive provisions of the statutory law in so doing.

We think the trial court erred when it failed to follow the judgment of the taxing authorities in the matter of penalties so far as such penalties applied to the years beginning with 1926, and further that court exceeded its authority and jurisdiction when it refused to add the penalty for those years and attempted to assess a penalty if the judgment was not paid in sixty days. While it appears from its opinion that it attempted to so enforce its judgment by providing that fifty per cent should be added to the judgment if it was not paid within the time fixed this order was in no sense a penalty such as the statutory law required. If that court had the right at all to omit the assessment of the statutory penalty it must be for the reason and on the ground specified by the statutory law. The record is without any evidence whatever that the omission or failure to return the property in dispute was not made with the intention to mislead, deceive or defraud. On the contrary, the facts in the case show beyond a reasonable doubt that the omission was made intentionally and purposely during all the years the claim was in process of collection and prior to that date. The company must be presumed to know that its claim was taxable if it had any value. When it assumed it had no value and was not taxable, in the absence of any consultation with the taxing authorities in respect thereto and any disclosure of the claim to such authorities, it voluntarily assumed all the liabilities provided by law if it should later be determined that it was taxable. Nothing is shown in the record which in the slightest degree tends to establish anything but a deliberate omission and a continued opposition to the payment of any taxes on the omitted property. Under these conditions and circumstances it was manifestly erroneous for the Court of Common Pleas to remit the statutory penalty and to disregard the positive provisions of the statutory law that such penalty should not be remitted until all lawful taxes on the property were paid. For this reason and for the attempt to impose a penalty for the failure to pay the judgment it rendered, its disposition of the case must be reversed and the case remanded to that court for further proceedings according to law.

An entry to this effect may be made in case No. 105.

Case No. 106, in which the Ebersbach Company is the plaintiff in error, will be dismissed at its costs.

MAUCK, P. J., and BLOSSER, J., concur.